Turley, J.,
delivered the opinion of the court.
In the determination of this case, we do not deem it neces-^ sary to enter into a minute investigation of the proof, inasmuch as we consider that there is but little, if any discrepancy in it when properly considered, and that it abundantly establishes the following facts: That William M. Richardson, the son of complainant, and former husband of Mrs. Adams, being in a low state of health and about to take a journey to the south, felt that it was proper that he should dispose of his property by will before he did so, as he anticipated that he might néver return home. That he procured his will to be written, by which he devised a large amount of property, *276 both rea] ancj personal, specifically, to his wife, and also gen- * * * , all his money, debts, dues and demands, lhat at the time of making his will his father was indebted to him, by note, in the sum of $¡611 50. That immediately after his will was written, he observed that it was his intention to have bequeathed this note to his father, and that he wished his will altered so as to make a bequest to that effect, but did not do so, because he was informed by the person who drew it that he could endorse on the back of the note what he wished tp be done with it, which would he as effectual as if he had mentioned it in the will; that in pursuance of this advice, he did write on the back of the note as follows: “If I never should return, I wish this note given up to my father.” Signed “W. M. Richardson.” That he frequently spoke to his wife on the subject, and directed her, in case of his death, to give the note to his father, and that if she did not directly promise him so to do, that she so behaved as to satisfy him that she had, and that he died in the full belief that she would do so; that she repeatedly said, after his death, that he had so instructed .her, and that she would do it. That he had received a handsome advancement from his father, who was then in failing circumstances. That he was himself rich and childless, and had, by his will, left the great mass of his property unconditionally to his wife. That at repeated times after the endorsement made upon the note, directing it to be given to his father, continued up to within a few days of his death, he always made the same statements as to his intentions of having included the note as a devise to him in his will; and as to his wishes, that it should be given to him upon his death, with the exception of a few fretful moments, when he was complaining of his improvidence, and expressing an opinion that it would be utterly useless to give him any thing. But it is manifest that such was not his serious design, for every thing shows that he was much attached to his parents, and that he never intended that they should he harrassed by having the payment of the note enforced. Notwithstanding all which, his wife, up-en her second marriage, forgetful of her former husband’s repeated expressions of his wish, and her own promises, certain-made after his death, if not before, most probably as we *277 think before, has with her husband, and perhaps under his influence, caused the note to be put in suit and obtained ajudgment at iaw thereon, to enjoin the collection of which, this bill has been filed. Several positions are assumed as grounds upon which to support the relief asked for in the bill.
1st. It is said that it is a fraud in the defendants to claim this note as their property under the devise in the will, inasmuch as the devisee is, under the circumstances a trustee for complainaut, and that this court will enforce the trust, and of this opinion is the court. It has long been well settled, that if a legatee prevent a testator from making provisions in a will fpr another, by promising that if it be not done ho would do something for the person thus intended to be provided for, with which the testator is satisfied, that the person so promising shall be compelled so to perform. 1 Vernon, 296: Eq. Cases Ab. 405: 3 Atkins, 539. fn the case under consideration, the testator was very anxious to devise the note in dispute to his father; he would have done so had he not overlooked it when his will was written; he would even have altered this will for that purpose, had he not been informed that his intention could be effectuated as well without; he frequently spoke about it to his wile, and up to the time of his death had an anxiety to have his will amended so as to make the devise. Who can doubt that he would have done so, if bis wife had not promised that she would comply with his wishes, or acted in such a manner as to induce him to believe that she had so promised, and that he died in the belief that she would comply. If such be the facts, as we think they are, the case falls clearly within the spirit, if not the letter, of the decisions referred to.
But if this case wanted additional support on this point, it has it in the case of Wm. Wickett and wife vs. John Raby, reported in 3 Brown’s Parliamentary Cases, page 16. There Mr. Pigot made his will, by which he left Mary, the wife of Wickett, his residuary legatee, and appointed her his executrix; but in his last sickness and a few days before his death, made the following declaration touching a bond due to him from Raby: “I have Rabj’sbond, which I keep,-1 don’t deliver it up, for I may live to want it more than he, but when *278 J j¡e [ie sljail have it; he shall not be asked or troubled for it.” ' After the death of Pigot, Raby being present at the inspec-tjQQ jjj3 paperSj amongst which was found the said bond, appiie¿ to Mary, the residuary legatee, and desired that she would make him a present of it, and to induce her to do so, he promised to be her counsel and serve her on all occasions, upon which she said to him, you may be easy, for it is safe in my hands. But Raby, hinting at accidents which might put it out of her power, such as matrimony, she replied, if I marry, I will deliver the bond to you the night before. She afterwards did marry, and the bond was put in suit, judgment at law obtained, anda bill filed to enjoin it, charging that Pigot had given Mary, his executrix, express orders to deliver up the said bond, and praying that the same might be delivered up to be cancelled. The executrix positively denied that Pigot ever gave her any orders to deliver up .the bond, but owned that he declared in his last sickness, and within a few days before his death, that if Raby proved her friend, and was not able to pay the bond, she might spare him as he deserved. The case was heard before Lord Chancellor Macclesfield, who decreed that the bond should be given up to be cancelled, and satisfaction of the judgment acknowledged on the record, and that Wickett and wife should pay all the costs. From this decree an appeal was prosecuted to the House of Lords, where so much of said-decree as ordered that the bond should be delivered up to be cancelled, and that satisfaction should be acknowledged on the record of the judgment, was, upon argument heard on both sides, affirmed. There is no opinion, either of the Lord Chancellor, or any judge in the House of Lords, published in the report, and therefore the reasons sustaining the decree can only be gathered from the argument of counsel for Raby, (he appellee. It was said, “that a parol order, 'attended with Mr. Pigot’s declarations in his last sickness, and his express directions given to the appellant, Mary, her acknowledgments thereof, and her express promise to deliver up the bond, pursuant to those directions, were sufficient evidences of a trust reposed in her for that purpose, and her promises were also sufficient to enforce a performance of such trust.” How much strong *279 er is this case than the one now under consideration; there, there was nothing but parol declarations of intention, here, there is a written endorsement on the back of the note, and that supported by a mass of parol evidence, both of intention, instruction and promises of performance, made, as we think, before, most certainly after the death of the testator, that is perfectly irrefragable. The case of Wickett and wife vs. Raby, has never been overruled, and although Judge Story, in speaking of it, says, “that it has gone to the very verge of the law,” yet he does not deny its authority. From this case’ then it is clear that the note in this case is extinguished in equity.
It is not necessary for us however to rest our determination upon this case alone, it is used only as ancillary to the other cases referred to.
There are two other propositions urged by the complainant, upon which it becomes not necessary for the court to express an opinion, viz: that the endorsement on the note is a testamentary disposition of it, and that if it be not, it is á donatio causa mortis. • These are both grave and important questions, which we do not feel disposed to determine, as we áre fully satisfied that the cause is with the complainant on the first point. The decree of the court below will be reversed, and a decree entered here for the complainant, in pursuance of the prayer of his bill.
Decree reversed.